# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2026

Lyle W. Cayce
Clerk

———————

No. 25-10730

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Leoncio Mendoza-Vargas,

*Defendant—Appellant*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:24-CR-84-1

———————————————————

Before Stewart, Graves, and Wilson, *Circuit Judges*.

Per Curiam:[*]

After pleading guilty to possession with intent to distribute fentanyl, Leoncio Mendoza-Vargas was sentenced to 175 months of imprisonment, followed by three years of supervised release. *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(C). He now argues for the first time on appeal that the district court erred by not applying a mitigating role reduction under U.S.S.G. § 3B1.2, and a corresponding decrease in his base offense level under U.S.S.G.

———————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-10730

§ 2D1.1(a)(5), based on Amendment 833[1] to the Sentencing Guidelines. Because Mendoza-Vargas has failed to show that the district court plainly erred in imposing his sentence, we AFFIRM.

## I. FACTUAL & PROCEDURAL BACKGROUND

According to the Presentence Investigation Report ("PSR"), the underlying incident leading to Mendoza-Vargas's arrest took place as follows. On November 2, 2024, a state trooper conducted a traffic stop on a vehicle for speeding. The driver of the vehicle was identified as Mendoza-Vargas. During the stop, Mendoza-Vargas stated that he was traveling to Dallas for his brother-in-law's wedding.[2] When the officer asked about his criminal history, Mendoza-Vargas denied having one. The officer subsequently ran a criminal records search, however, which revealed that Mendoza-Vargas had previous offenses involving drugs and firearms. When the officer confronted Mendoza-Vargas about his criminal record, he apologized and stated that he had moved on from "that life." The officer informed Mendoza-Vargas of his suspicions regarding his criminal activity and asked if there was anything illegal in his vehicle. Mendoza-Vargas denied having anything illegal, including any specific substances but when the officer asked for consent to search his vehicle, he refused. Consequently, the officer requested a K9 unit to assist with a free-air sniff.

Footage from the officer's patrol vehicle shows that Mendoza-Vargas "immediately began using his phone" during the K9 sniff. Soon after beginning the sniff, the K9 alerted to the presence of narcotics. A subsequent search of the vehicle revealed five vacuum-sealed bundles concealed inside of a paper bag on the rear floorboard. Mendoza-Vargas claimed he did not

---

[1] U.S.S.G. App. C, Amend. 833 (effective date November 1, 2025).

[2] The PSR indicates that Mendoza-Vargas was traveling from Phoenix, Arizona.

No. 25-10730

know what was in the bundles. Laboratory testing later determined that the bundles contained 10.017 kilograms (approximately 23 pounds) of fentanyl.

After his arrest, Mendoza-Vargas admitted to an agent that he frequented a club in Phoenix, Arizona, called Oasis. Due to his prior drug convictions and prison record, he was well-known to other narcotics dealers at the club. He stated that about four months prior, a man named "Javier" approached him at the club and the two agreed that Mendoza-Vargas would transport drugs for Javier. Mendoza-Vargas rented a vehicle from Enterprise Rental Car, picked up the fentanyl from a parked car in an apartment complex,[3] departed Phoenix, Arizona, and headed toward an unknown location in the Dallas-Fort Worth metroplex. He stated that he purchased a second cell phone to communicate with Javier, who contacted him every two to three hours during the trip and planned to send him the drop-off location once he reached Dallas. During the stop, the phone he used to communicate with Javier rang excessively and then abruptly stopped.[4]

Mendoza-Vargas was arrested that day and transferred into federal custody. In February 2025, pursuant to a plea agreement without an appeal waiver, he pleaded guilty to possession with intent to distribute fentanyl. Applying the 2024 Sentencing Guidelines Manual, the PSR assessed a base offense level of 34 under U.S.S.G. § 2D1.1(a)(5) because Mendoza-Vargas's offense involved at least 4 kilograms but less than 12 kilograms of fentanyl. After a three-level reduction for acceptance of responsibility, his total offense level was 31. The PSR did not recommend a mitigating role reduction under

---

[3] The drugs were stored in the passenger compartment of an older-model Mazda, with the key hidden in the gas cap and they were packaged in the same manner as they were found by law enforcement.

[4] According to the PSR, Mendoza-Vargas later attempted to call Javier in the presence of law enforcement, but the call was disconnected and would not go through.

No. 25-10730

U.S.S.G. § 3B1.2. With a criminal history category of IV, his guidelines range was 151 to 188 months of imprisonment. He did not object to the PSR's calculations.

The district court adopted the PSR and sentenced Mendoza-Vargas within the guidelines range to 175 months of imprisonment, followed by three years of supervised release. In explaining its sentencing decision, the district court addressed the 18 U.S.C. § 3553(a) factors in detail, pointing out that there were several extreme aggravating factors. One aggravating factor was the involvement of such an enormous quantity of potentially lethal fentanyl that had been "doused" in a cleaning agent or chemical liquid to evade K9 detection. *See id.* § 3553(a)(2)(A). Another aggravating factor was the apparent lack of deterrence from Mendoza-Vargas's prior drug and firearm convictions. *See id.* § 3553(a)(1). A third aggravating factor was the need to protect the public given that the large quantity of fentanyl Mendoza-Vargas was transporting suggested that he "likely would have continued in a criminal enterprise but for the intervention of law enforcement." *See id.* § 3553(a)(2)(C).

The district court then reasoned that a 175-month sentence was "sufficient but not greater than necessary to comply with the 3553(a) factors." The district court further stated that "even if the correct advisory guidelines range was not considered and the [c]ourt erred in any of its calculations or weighting of those calculations . . . it would have imposed the same sentence for the same reasons given during the sentencing hearing regardless and irrespective of the applicable advisory guidelines range." Mendoza-Vargas filed this appeal.

## II. DISCUSSION

For the first time on appeal, Mendoza-Vargas argues that because he was merely a drug courier, the district court erred by not applying a

mitigating role reduction under § 3B1.2 and a corresponding decrease in his base offense level under § 2D1.1(a)(5) as set forth in Amendment 833 to the Guidelines. U.S.S.G. App. C, Amend. 833 (effective date November 1, 2025).[5] He contends that Amendment 833, which was not in effect until after he was sentenced, should retroactively apply to his sentence because it is a clarifying amendment.  The Government counters that Amendment 833 is inapplicable to Mendoza-Vargas's sentence because it is substantive. The Government further avers that, even assuming Amendment 833 is clarifying and therefore applicable to Mendoza-Vargas, he nonetheless fails to show that the district court plainly erred by failing to apply a mitigating-role reduction.

### A. Standard of Review

"We typically review the district court's interpretation of the Guidelines de novo and its factual findings for clear error." *United States v. Rodriguez-Leos*, 953 F.3d 320, 324 (5th Cir. 2020). However, unpreserved challenges are reviewed for plain error only. *Id.* To establish plain error, a defendant must show an error that was clear or obvious, rather than subject to reasonable dispute, and that affects his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If the defendant makes such a showing, this court has the discretion to correct the error but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). Because Mendoza-Vargas did not object on the grounds that he now raises on appeal, our review is for plain error. *See Rodriguez-Leos*, 953 F.3d at 324; *United States v. Enrique-Ascencio*, 857 F.3d 668, 678 (5th Cir. 2017) (applying plain error review where the appellant

---

[5] *See* https://www.ussc.gov/guidelines/amendment/833.

argued that his case should be "remand[ed] to the district court in order to determine whether a lesser sentence [was] appropriate under an amendment to the Guidelines that took effect after the date of his sentence").

### B. Applicable Law

The Guidelines provide that the district court shall use the manual that is in effect on the date that a defendant is sentenced, or, if there are Ex Post Facto Clause concerns, the district court shall use the manual in effect on the date the offense was committed. U.S.S.G. §§ 1B1.11(a), (b)(1). Nevertheless, amendments to the Guidelines that were "not effective at the time of the commission of the offense or at the time of sentencing" "may be considered" if they are "intended only to *clarify*, rather than effect substantive changes." *United States v. Anderson*, 5 F.3d 795, 802 (5th Cir. 1993). In other words, if an amendment is determined to be clarifying rather than substantive, it may have retroactive application in certain circumstances. In such a case, the amendments are "not controlling, [and this court] consider[s] [them] as evidence of the Sentencing Commission's intent behind" the Guideline at issue. *Id.*

Section 2D1.1(a)(5) of the Guidelines provides for a decrease in a defendant's base offense level if he receives a mitigating role adjustment under § 3B1.2. U.S.S.G. § 2D1.1(a)(5). Amendment 833, which took effect on November 1, 2025, amended the text of § 2D1.1 and the commentary of § 3B1.2. U.S.S.G. App. C, Amend. 833. The amendment added a special instruction to the text of § 2D1.1(e) "to address the inconsistent application of § 3B1.2 in § 2D1.1 cases and to encourage broader use of § 3B1.2" in those cases. U.S.S.G. App. C, Amend. 833. The special instruction provides that a reduction "under § 3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending

or receiving phone calls or messages, or acting as a lookout." U.S.S.G. § 2D1.1(e)(2)(B)(i). It further provides that a reduction "shall apply regardless of whether the offense involved other participants in addition to the defendant, and regardless of whether the defendant was substantially less culpable than the average participant in the criminal activity." *Id.* § 2D1.1(e)(2)(B).[6]

To determine whether an amendment is clarifying or substantive, this court considers several non-determinative factors: (1) whether the Sentencing Commission expressly characterizes the amendment as clarifying, (2) whether the amendment addresses a circuit split (indicating a substantive amendment), (3) whether the amendment is listed as retroactively applicable in U.S.S.G. § 1B1.10(d), p.s. (suggesting a clarifying amendment), and (4) whether the amendment alters only the language of the commentary as opposed to the text of the Guideline (signaling a clarifying amendment). *See United States v. Sanchez-Villareal*, 857 F.3d 714, 720 (5th Cir. 2017) (citing *United States v. Huff*, 370 F.3d 454, 465–67 (5th Cir. 2004)).

*C. Analysis*

Here, three out of four factors cut against Mendoza-Vargas's argument that Amendment 833 is a clarifying amendment. First, there is no "express language on the part of the Commission that Amendment 833 is a

---

[6] Additionally, Amendment 833 deleted the phrase "minimal participant" from § 2D1.1(a)(5) and (b)(17). U.S.S.G. App. C, Amend. 833. It also provides for a lower base offense level cap under § 2D1.1(a)(5) for a defendant receiving a mitigating role reduction. *See id.* It further changed the mens rea requirement in § 2D1.1(b)(13)(B) from "willful blindness or conscious avoidance of knowledge" to "reckless disregard." *Id.* Finally, it amended Application Note 3(A) of the commentary to § 3B1.2. *Id.*

clarifying one." *See Huff*, 370 F.3d at 466; U.S.S.G. App. C, Amend. 833. Second, Amendment 833 alters the text of § 2D1.1 itself (as opposed to just the language of the commentary), which also suggests that it is substantive rather than clarifying. *See id.* Finally, the amendment is not listed in § 1B1.10(d) as being retroactively applicable, which we have held may be an indication that the amendment is substantive rather than clarifying. *See* U.S.S.G. § 1B1.10(d); *Huff*, 370 F.3d at 466.[7] Indeed, the only factor that does not suggest the amendment is substantive is the absence of an indication that Amendment 833 was issued in response to a circuit split. *See* U.S.S.G. App. C, Amend. 833; *Sanchez-Villareal*, 857 F.3d at 720. Thus, on balance, our review of the applicable factors suggests that Amendment 833 is likely substantive, rather than clarifying.

But even assuming arguendo that Amendment 833 is clarifying, and therefore potentially retroactively applicable to Mendoza-Vargas's sentence, he still cannot show that the district court plainly erred in failing to apply it. Recall that to establish plain error, Mendoza-Vargas must show an error that was clear or obvious, rather than subject to reasonable dispute, and that affects his substantial rights. *See Puckett*, 556 U.S. at 135. If such a showing is made, we have the discretion to correct the error if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.*

Here, however, Mendoza-Vargas fails at both the first and second prongs because he cannot show an error, much less a plain one. *Id.* As a preliminary matter, our determination that three out of four relevant factors indicate that Amendment 833 is likely substantive supports the conclusion

---

[7] *Huff* references § 1B1.10(c), which was redesignated as § 1B1.10(d) on November 1, 2014.  U.S.S.G. App. C, Amend. 780.

that the amendment does not apply retroactively. *See Huff*, 370 F.3d at 466. And even if somehow the district court erred in not applying the amendment retroactively, such error was not plain because whether Amendment 833 is retroactively applicable is subject to reasonable dispute. *See United States v. Rodriguez-Parra*, 581 F.3d 227, 230–31 (5th Cir. 2009) (explaining that an error is not clear or obvious where an issue is disputed or unresolved, or where there is an absence of controlling authority). Indeed, Mendoza-Vargas has not pointed to any controlling authority in support of his argument that Amendment 833 is clarifying. *Id.* Because he cannot show an error that is plain or obvious, our plain-error analysis ends here. *See Puckett*, 556 U.S. at 135.[8]

Given our above reasoning and the absence of binding authority to the contrary, we hold that the district court did not plainly err in failing to apply a mitigating role reduction under U.S.S.G. § 3B1.2 and a corresponding decrease in Mendoza-Vargas's base offense level under U.S.S.G. § 2D1.1(a)(5) based on Amendment 833 to the Sentencing Guidelines. *Id.*

## III. Conclusion

For the foregoing reasons, Mendoza-Vargas's sentence is AFFIRMED.

---

[8] We further note that even if Mendoza-Vargas could show plain or obvious error, he would fail at the third prong involving substantial rights. *See Puckett*, 556 U.S. at 135. As the district court emphasized at sentencing, it would have imposed "the same sentence for the same reasons" regardless of any error in its Guidelines calculations due to "extreme" aggravating factors associated with Mendoza-Vargas's offense. And as this court has held, "[a] defendant may not carry his plain error burden . . . if the sentencing court nevertheless concluded the chosen sentence was appropriate regardless of the correct Guidelines range[.]" *United States v. Randall*, 924 F.3d 790, 796 (5th Cir. 2019) (cleaned up).